IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                     Case No. 1:17-cr-10009

DONNA WILLIAMS                                                                              DEFENDANT

## ORDER

Before the Court is Defendant's Supplemental Motion for Release from Custody (ECF No. 221) and Motion to Reduce Sentence Pursuant to Section 603 of the First Step Act of 2018. (ECF No. 225). The Government filed a response. (ECF No. 227). Defendant filed a reply to the Government's response. (ECF No. 230). The Court finds this matter ripe for consideration.

### I. BACKGROUND

On June 1, 2018, Defendant pleaded guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846 and one count of theft of public money in excess of $1,000 in violation of 18 U.S.C. § 641. On February 13, 2019, Defendant was sentenced to 151 months in prison, three (3) years supervised release with conditions, and a $100.00 special assessment.

On June 26, 2020, Defendant filed a request for a reduction in sentence with the warden of Carswell Federal Medical Center. On July 8, 2020, Defendant's request was denied. On July 18, 2020, Defendant appealed the warden's denial, but this appeal was denied on August 6, 2020. On September 1, 2020, Defendant filed a BP-11, appealing the denial to the Bureau of Prison's general counsel. Thirty days have elapsed since the filing, and Defendant has not received a response.

On May 13, 2020, Defendant filed her *pro se* motion for compassionate release. (ECF No. 219). This motion was denied for failure to exhaust available administrative remedies within

the BOP. (ECF No. 220). On May 29, 2020, Defendant filed a *pro se* supplement to her previous motion for compassionate release. (ECF No. 221). The Court then appointed the Federal Public Defender's Office to represent Defendant. (ECF No. 222). On October 1, 2020, Defendant filed a supplemental motion, which is the present motion for compassionate release. (ECF No. 225).

## II. DISCUSSION

As previously stated, Defendant seeks a compassionate-release reduction of her sentence pursuant to the First Step Act ("FSA"). The government contends that a compassionate release is not appropriate in this case.

Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. 3582(c)(1)(A)(i). The Court will address each issue; however, the Defendant must satisfy the statute's gate-keeping provision before the Court addresses the merits.

### A. Exhaustion of Administrative Remedies

The FSA has provided two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once she "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring the motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Defendant bears the burden of showing that she exhausted her administrative rights with the BOP before filing a compassionate-release motion. *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019).

The BOP has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed in. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate-release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c).

In the present case, Defendant filed a request for a reduction in sentence with the warden of Carswell Federal Medical Center. On July 8, 2020, Defendant's request was denied. On July 18, 2020, Defendant appealed the warden's denial, but this appeal was denied on August 6, 2020. On September 1, 2020, Defendant filed a BP-11, appealing the denial to the Bureau of Prison's general counsel. Since this filing, thirty days have elapsed, and Defendant has not received a response.

Accordingly, Defendant has satisfied the gatekeeping requirement, and the Government does not dispute this. Thus, the Court may address the merits.

### B. Extraordinary and Compelling Reasons

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. §3582(c)(1)(A)(i). Congress has not defined what constitutes "extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.*

The relevant policy statement contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." USSG § 1B1.13(1)(A).[1] This policy statement limited "extraordinary and compelling reasons" to only include the following four circumstances:

(A) Medical Condition of the Defendant. –

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e.,

---

[1] This policy statement predates the FSA and the Sentencing Commission has not since updated it or adopted a new policy statement. This creates an issue because parts of the pre-FSA policy statement do not square neatly with the language of the FSA. *See* U.S.S.G. § 1B1.13 (authorizing compassionate release only on the BOP's motion). Thus, it is unclear whether extraordinary and compelling reasons may be found only from the specific examples listed in the pre-FSA policy statement or if courts can look beyond those examples. Courts have answered that question with mixed results. *See United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (highlighting the debate regarding the outdated policy statement). However, at minimum, the pre-FSA policy statement provides guidance as to what constitutes extraordinary and compelling reasons. *See U.S. v. Schmitt*, 2020 WL 96904, at *3 (stating that various courts agree that even though the policy statement has not been updated, it nevertheless provides helpful guidance).

>> a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is –
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances. –
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues that her age, medical conditions, and the inability to social distance while incarcerated qualifies her for compassionate release. Defendant is 66 years old and has Chronic Obstructive Pulmonary Disease ("COPD"), hypertension, and heart conditions. Defendant requires daily medication, a Continuous Positive Airway Pressure ("CPAP") machine, and an inhaler as prescribed by the medical staff at Carswell Federal Medical Center ("CFMC"). (ECF No. 225-4). Defendant adds that keeping her incarcerated with debilitating illnesses plus risk of exposure to COVID-19 qualifies as cruel and unusual punishment.

The Government argues that while Defendant may have several medical issues, the medical staff at CFMC is well equipped to manage Defendant's medical needs. The Government also

maintains that the Bureau of Prisons is doing as much as possible to keep the prisoners safe and reduce the spread of COVID-19.

While the Court agrees that Defendant has a series of serious medical conditions, Defendant has not shown that these medical conditions cannot be managed by the CFMC medical staff. Further, even if the Court found these conditions to be an extraordinary and compelling reason to justify compassionate release, Defendant's argument would fail under the sentencing factors laid out in 18 U.S.C. § 3553(a).

### C. § 3553(a) Factors

The Court must also determine whether the sentencing factors set forth in 18 U.S.C. § 3553(a) support a compassionate release, to the extent that any are applicable. That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > >
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and
> > >
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence and the sentencing range established for—
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant argues that she has had ample time to reflect on the harm caused by her crimes due to her incarceration and worsening medical condition. Defendant has utilized her time in the BOP to complete several courses, including a drug education course (ECF No. 225-6) and has also maintained a clear disciplinary record. (ECF No. 225-7). Defendant states that her medical condition in conjunction with her positive actions while incarcerated warrant compassionate release.

The Government argues that a reduction is unwarranted under § 3553(a) due to the nature of the offense, and while Defendant may have a serious medical condition that could warrant her release, she remains a danger to the community. The Government directs the Court to the Final Presentence Report stating:

> In addition to the interviews and proffers of codefendants, during the course of their investigation of Permenter, seven other individuals, who were familiar with Permenter's drug distribution activities were interviewed. They each described Williams as being in charge of the group's activities at least as far as the fact she handled the finances, assisted with acquiring meth from sources in Texas through contacts and actually went to pick up quantities of meth, but even that she made decisions about who they allowed to distribute their meth. Williams and Permenter were described as joint managers in that Williams handled the finances and made business decisions and Permenter handled distribution and enforcement. Some of the individuals related how Permenter and Rogers had attacked an individual who they suspected of being a snitch, and how they had planned to kill another individual who was a suspected snitch. While Permenter had, along with Rogers, developed the plan to kill the suspected snitch, he sought approval from Williams.

(ECF No. 135, p. 8).

The Government maintains that Defendant's leadership role in the drug distribution plus her extensive criminal history qualifies her as a danger to the community regardless of her health and age.

While the Court acknowledges Defendant's efforts to rehabilitate herself while in prison, the other contributing factors weigh against her. The nature of this crime combined with Defendant's leadership role in the drug distribution organization do not support release. Accordingly, the § 3553(a) factors do not support Defendant's request for compassionate release.

### III. CONCLUSION

For the above-discussed reasons, the Court finds that Defendant's Supplemental Motion for Release from Custody (ECF No. 221) and Motion to Reduce Sentence Pursuant to Section 603 of the First Step Act of 2018. (ECF No. 225) should be and hereby are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 8th day of April, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge